```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3   UNITED STATES OF AMERICA,      )
                                    )  Docket No. 20 CR 316-1
 4                  Plaintiff,      )
                                    )  Chicago, Illinois
 5        v.                        )  April 24, 2024
                                    )  11:03 a.m.
 6   CHRISTIAN REA,                 )
                                    )
 7                  Defendant.      )

 8        TRANSCRIPT OF PROCEEDINGS - Supervised Release Hearing
                BEFORE THE HONORABLE THOMAS M. DURKIN
 9

10   APPEARANCES:

11   For the Government:    MR. BARRY JONAS
                            Assistant U.S. Attorney
12                          219 South Dearborn Street, 5th Floor
                            Chicago, Illinois 60604
13

14   For the Defendant:     MR. TIMOTHY R. ROELLIG
                            Novelle & Roellig LLC
15                          47 West Polk Street, Suite M11
                            Chicago, Illinois 60605
16

17   Also present:          MR. ARON POHLMEYER (U.S. Probation)

18

19

20

21

22   Court Reporter:        ELIA E. CARRIÓN, CSR, RPR, CRR, CRC
                            Official Court Reporter
23                          United States District Court
                            219 South Dearborn Street, Room 1432
24                          Chicago, Illinois 60604
                            312.408.7782
25                          Elia_Carrion@ilnd.uscourts.gov
```

1     (Proceedings heard in open court.)
2             THE COURT: Please call the case.
3             THE CLERK: Case No. 20 CR 316-1, U.S.A. v.
4   Christian Rea.
5         May I please ask the attorneys on behalf of the
6   government to state your name.
7             MR. JONAS: Good morning, Your Honor. Barry Jonas
8   for the United States.
9             THE CLERK: And for the defendant.
10            MR. ROELLIG: Good morning, Your Honor. Tim Roellig
11  on behalf of Mr. Rea. He is present to my right.
12            THE CLERK: And on probation.
13            PROBATION OFFICER: Good morning, Your Honor.
14  Aron Pohlmeyer on behalf of U.S. Probation.
15            THE COURT: All right. Good morning. We are here
16  today because in January Mr. Pohlmeyer suggested -- filed a
17  petition relating to the supervised release of the defendant
18  to revoke his supervised release and sentence him to prison.
19  We had a hearing, and everyone said, we'll give -- not
20  everyone, but it was generally agreed to give him yet another
21  chance, of which he's had many.
22        I received another special report dated April 11th
23  where there is still more positive drug tests, in this case
24  for cocaine, which, as far as I know, is still illegal in the
25  state of Illinois. I don't think the Illinois legislature has

1 legalized that yet. It's still a crime to buy it, possess it.
2 And then he had another positive test, which he
3 blamed on a flavored CBD beverage he had heard about on TikTok
4 social media platform.
5 All right. I had told -- Mr. Roellig, my courtroom
6 deputy informed you to tell your client that he may very well
7 be ordered to surrender and serve jail time today.
8 MR. ROELLIG: That is correct, Judge, and I did
9 inform him of that.
10 THE COURT: Okay. All right. Let's hear first from
11 the government on what we ought to do in this case.
12 MR. JONAS: Your Honor, I just want to make sure I
13 understand -- not correct Your Honor, but the timing of
14 everything. There was a January 11th report that described
15 all of the usage of the cocaine and the positive test. We had
16 a hearing on April 3rd, I believe, where we discussed that,
17 and then probation reported that the defendant was beginning
18 to do some work as a landscaper and that -- with the -- that's
19 where we all agreed, let's give him one more chance.
20 THE COURT: That's right. Thank you.
21 MR. JONAS: And then the April report, April 11th, is
22 where the CBD beverage came up and tested positive on the
23 CB -- CBD. I think there is -- I think the defendant has
24 demonstrated a lack of judgment time and time again. I think
25 Your Honor has shown great patience with him, and I do think

1   that at this point, with everything that's happened in the
2   past, I concur with probation's recommendation that he should
3   be revoked and sentenced to 60 days' incarceration.
4            Where I am deferring to the Court is whether or not
5   supervised release should continue upon release or whether or
6   not he should be terminated unsatisfactorily.  I go back and
7   forth on that, Judge, so I'm going to defer to you.
8            THE COURT:  Okay.  Let's hear from defense.
9            Oh, actually, let's hear from Mr. Pohlmeyer next,
10  then I'll hear from defense.
11           Go ahead, Mr. Pohlmeyer, what do you have to say on
12  the issues?
13           PROBATION OFFICER:  I don't have a whole lot further
14  than what was in the report from April 11th.  I can note that
15  the Treasury Offset Program did apparently collect his IRS
16  refund in the amount of $418.72.  So that was applied to his
17  restitution obligation.  And since the report, he submitted a
18  urine screen on April 15th that did return negative for any
19  illicit substances.  He continues to participate in substance
20  abuse treatment through his own insurance at a treatment
21  provider in the western suburbs.
22           THE COURT:  All right.  How much is left on
23  restitution?
24           PROBATION OFFICER:  I'm showing a balance of
25  $13,021.94 remaining.

1       THE COURT: Mr. Jonas, that restitution was based on,
2 what, the expenses of the officers who were injured when the
3 explosive device detonated?
4       MR. JONAS: That's correct, Judge. I -- if I
5 remember correctly, it was the town or the county had covered
6 the expenses through their health insurance so -- that -- but,
7 yes, it relates to the injuries.
8       THE COURT: Do any of the officers who were injured
9 still have lasting effects from those injuries, or have they
10 all regained their hearing?
11       MR. JONAS: I actually don't know, Judge. I haven't
12 checked.
13       THE COURT: Okay.
14       All right. Mr. Roellig.
15       MR. ROELLIG: Judge, Your Honor's well aware of
16 the facts of this case and what --
17       COURT REPORTER: Can you speak directly into the mic,
18 please?
19       THE COURT: Yeah, you can pull it closer. Thanks.
20       MR. ROELLIG: Sorry about that.
21       Judge, you're obviously well aware of the facts.
22 This was a commercial-grade firework, super Peony No. 4, I
23 believe. Obviously, it caused injuries to these officers.
24 There was an allegation -- or some evidence at the time that
25 one of the officers was going to continue to have tinnitus, so

1  obviously, we acknowledge how serious this offense was.

2  The defendant since that time has had obvious
3  difficulty with both being truthful about his drug use, and
4  then the drug use that we have, I suppose that, at least since
5  the end of February he's been negative, and that's -- that's
6  an improvement, and it's nice to know that at least his last
7  test was negative even before he knew what -- what he may have
8  been facing today.  So I -- I think that's at least -- goes on
9  the -- on the ledger on his side, so to speak.

10  Judge, I think that -- you know, I'll defer to
11  Your Honor.  We'd ask for whatever minimum time that
12  Your Honor thinks is necessary in this situation.  I think
13  that continuing him on supervised release -- I mean, the
14  restitution I think we're paying back an insurance company,
15  and that's not nothing, but I don't think we're paying anybody
16  out of pocket back.  I think it's insurance company funds.
17  But, nonetheless, it's an obligation, and -- and -- and I
18  believe that he would have to remain on supervised release in
19  order to make those payments.

20  But, otherwise, he doesn't seem like he would be a
21  good candidate from -- for continued supervised release
22  because of his difficulty.  I'm hoping that it's because of
23  his immaturity, youth, and that, you know, when he hits 25,
24  26 years old, his judgment will change on these issues.  But,
25  you know, on his positive side, he's been able to maintain

1 employment.

2 He has a wonderful family, Judge. They're here today
3 in court. His parents are here. They have been continually
4 supporting him throughout this process. His sisters are here.
5 They're more disappointed in him than the Court is. I know
6 that as a -- as a matter of fact. That doesn't mitigate the
7 situation in any way at all, but it just -- I know that when
8 the defendant gets out, he's going to continue to have a
9 strong support system. There are a lot of defendants in his
10 position that don't have that, and so I think that goes to --
11 to the positive. But at the same time, obviously, he's doing
12 things that are causing his family a lot of distress and
13 there's no -- there's no question about that.

14 Judge, I -- I would ask Your Honor to give as least
15 amount of time that you think is -- is applicable here. It
16 has been a back and forth for him. There has been times when
17 he has done better and times when he has done worse. I think
18 that down the line these things will be put behind him and he
19 will not be participating in -- in this kind of conduct.
20 We're just not there yet.

21 THE COURT: All right. Are you contesting the
22 violations?

23 MR. ROELLIG: Oh, we are not, Judge.

24 THE COURT: All right.

25 MR. JONAS: Your Honor, if I may? Just -- I --

1  having heard Mr. Roellig speak, I do think now that he should
2  continue with supervised release upon release from
3  incarceration.
4       THE COURT: Why?
5       MR. JONAS: Restitution payments. If he's going to
6  continue to work, I think he should be able to continue making
7  restitution payments.
8       THE COURT: Doesn't your Financial Litigation Unit
9  continue to collect on restitution even when someone's off
10 supervised release?
11      MR. JONAS: They -- they do, but I think having the
12 supervised release is an extra benefit of trying to ensure
13 that payments are made. I understand that the -- that our
14 Financial Litigation Unit would seek restitution, but if we
15 have a probation officer supervising him, that's just another
16 layer of enforcement of that.
17      THE COURT: My experience with your FLU unit is
18 they're relentless. And I say that with all -- all due
19 respect.
20      MR. JONAS: Yes.
21      THE COURT: They know where he works, they know where
22 he lives, and they go in and -- whether the defendant is being
23 supervised by a probation officer or not, once they know where
24 he works and lives, they will get their money.
25      MR. JONAS: Yes, Judge.

1       THE COURT:  And I think the payments so far, other
2  than the tax refund, have been, I assume, taken out through
3  his paychecks.
4       Do you know, Mr. Pohlmeyer?
5       PROBATION OFFICER:  I'm looking here.  I believe --
6  Judge, I believe he's making payments, rather than it's coming
7  out of his check.  That's my understanding.
8       THE COURT:  All right.  But if he stops making
9  payments, the FLU unit's going to go to his employer and take
10 the payments out of his check.  That's how they work.
11      MR. JONAS:  Yes, Judge.
12      THE COURT:  Okay.  Mr. Rea, you have a right to make
13 any statement on your own behalf before I decide what to do in
14 this.  Do you wish to make a statement?
15      THE DEFENDANT:  Yeah, Your Honor.
16      THE COURT:  All right.  Make sure you're in front of
17 a microphone.  Just pull it over.  Go ahead.
18      THE DEFENDANT:  I'm -- I'm basically -- well, I'm a
19 little nervous right now, but just trying to say that
20 I'm sorry for having ups and downs.  I mean, I'm trying,
21 trying my best to do -- to give my life around, to start all
22 over again.  It's been, yeah, downs and downs, just with you.
23 And I've been let -- letting you down.  But I mean, this time,
24 if I -- if I do get a chance, I -- Imma do my best to take --
25 the ability to take advantage of that -- of that chance, if --

1    if you give me.  Imma start doing well.  Imma continue doing
2    well, how I am right now.  How they said, the last one came
3    negative.  I'm doing the payments.  I was at home with no work
4    because of my seasonal job, so I just wanted to start that,
5    and I started giving the payments.
6            I was giving the payments cash at the Western Union,
7    but I did the application for it so they could start taking it
8    away from my job, so I'm just waiting on that to come in so
9    they could start grab -- like taking it from there.  And,
10   yeah, just I'll -- I'll do the -- I'll take advantage of
11   those -- of the last chance.  If I don't, they take me in, you
12   know.  That will probably be it, whatever I have to say for
13   the last chance.
14           THE COURT:  All right.  Well, last chance was I think
15   maybe five or six phone calls ago.  I gave you last chance
16   after last chance after last chance.
17           You're working now?
18           THE DEFENDANT:  Yeah, I'm -- I'm working full-time
19   right now.  And I have just gotten a, well, like a step up for
20   being like a laborer to being a leader of a group, so --
21           THE COURT:  Who do you work for?
22           THE DEFENDANT:  Huh?
23           THE COURT:  Who do you work for?
24           THE DEFENDANT:  K&R Landscaping in Plainfield.
25           THE COURT:  Okay.  How many hours do you work

1  every day?

2  THE DEFENDANT: It's nine hours.

3  THE COURT: And do you work five days a week, six, or
4  seven?

5  THE DEFENDANT: Yeah, five. Monday through Friday,
6  6:00 to 4:30. And then Saturdays I work with my
7  brother-in-law on the side jobs that they do.

8  THE COURT: Okay. Well, and the treatment programs
9  you're going through, are you paying for that yourself through
10 insurance?

11 THE DEFENDANT: Yeah, I'm paying them my -- myself.

12 THE COURT: All right. Well, I rarely send someone
13 to jail for addictions. I don't view that as -- although it's
14 arguably criminal conduct because you're possessing a
15 narcotic, which as I said, I think is still illegal in
16 Illinois, but I almost always send somebody to jail if they
17 commit crimes. I rarely, if ever, have sent anybody back to
18 jail for addictions.

19 I hate to reward bad conduct. Your family is here.
20 They realize if you keep using drugs, eventually you're going
21 to end up spending all the money you make at your landscaping
22 job on drugs. You're inevitably going to get in trouble.

23 Do you -- are you married?

24 THE DEFENDANT: No.

25 THE COURT: Do you have a child?

1       THE DEFENDANT: No, neither.

2       THE COURT: All right. And you live with your
3 parents?

4       THE DEFENDANT: Yeah, I live with them.

5       THE COURT: They're here?

6       THE DEFENDANT: Yeah. That's them right there. I
7 pay rent with them, and I contribute with whatever they need.

8       THE COURT: All right. Well, over the objection of
9 the government, I'm going to simply terminate your supervised
10 release unsatisfactory. I don't know that putting you in jail
11 at this point is going to change your behavior.

12       I hate to, as I said, reward bad conduct, but by
13 terminating your supervision unsatisfactory, the next time you
14 get in trouble, a judge is going to look at that and not going
15 to give you probation because they're going to know you can't
16 operate on probation successfully.

17       I'm not going to waste Mr. Pohlmeyer's time and the
18 probation officer's time monitoring addiction that if you
19 don't want to help yourself, I'm done having Mr. Pohlmeyer try
20 and help you.

21       If your family's here, they ought to help you. If
22 you're going to treatment programs, they ought to help.
23 You're going to have to keep paying restitution.

24       As I said, if another judge, whether it's
25 DuPage County or Cook County or in federal court, runs across

1  you again regarding criminal conduct, they're going to see
2  that I terminated you unsatisfactory and they're going to
3  more -- more than likely give you jail because you can't
4  successfully complete supervised release.
5        But I'm -- I don't want to take you away from a job
6  at this point. I'm not sure that's productive for society.
7  You're working six days a week, essentially, and I'm not sure
8  taking you away from a job where it's uncertain whether you'd
9  have that job when you got out would necessarily help society.
10 I'd rather have you working, paying the restitution, and I'm
11 just going to simply terminate your supervised release
12 unsatisfactory and be done with you.
13       I'm -- probation's done all they can for you. If
14 they can't help you and you don't want to take advantage of
15 their help, they have a lot of people to deal with that want
16 help. Your family's here. Hopefully, they want to help you.
17 Hopefully, they'll make you realize you were one short step
18 today from going to jail for anywhere from 60 days or
19 something less, but I'm not going to send you to jail. I'm
20 just going to terminate your supervised release
21 unsatisfactory, and that'll be the end of it.
22       Anything else from the government?
23       MR. JONAS: No, Judge.
24       THE COURT: Anything else from defense?
25       MR. ROELLIG: No, Your Honor.

1          THE COURT:  From probation?

2          PROBATION OFFICER:  No, Your Honor.

3          THE COURT:  Mr. Rea, don't view this as a reward.

4    It's a failure by you.  And if you treat it as a reward and go

5    out and get high or start using dope, you're going to

6    disappoint your parents, you're going to end up being a bad

7    addict, and you're going to end up committing crimes to feed

8    your addiction, because I've seen it happen to a lot of

9    people, and then you're going to be in front of another judge

10   and you're going to be begging for probation, and that judge

11   is going to see I terminated you unsatisfactory and they're

12   going to send you to jail.

13         So don't put yourself in that position.  Do you

14   understand?

15         THE DEFENDANT:  Yeah, I understand.  And I won't turn

16   into that.

17         THE COURT:  I hope you don't.  I really do.

18         Thank you all.

19         MR. ROELLIG:  Thank you, Judge.

20      (Proceedings concluded at 11:19 a.m.)

21                          CERTIFICATE

22    I certify that the foregoing is a correct transcript from

23   the record of proceedings in the above-entitled matter.

24   */s/ Elia E. Carrión*            *30th day of April, 2024*
     _____     _____
25   *Elia E. Carrión*                            *Date*
     *Official Court Reporter*